Before we start, I think I should tell you there's only two of us here, but there's a third one who will be heard at appropriate times. Judge Lipis is not able to make it. The case, of course, will be decided by three judges. We may proceed now. Will you let me know if that is an okay level for the microphone? Thank you, your honors. May it please the court, Maynard Schwartz for the United States. With your permission, I'd like to reserve two minutes for rebuttal. You may. Let me also say that at some point I'm going to be asking some questions of the government regarding pictures, and of course I may be asking you also. I am the government, your honor. Oh, you are the government. You're right. This is the first case. So I'm happy to answer those questions. My associate here, if you just refer to the exhibit numbers, you can put it up on the monitors and we can discuss them. So you might as well start putting them up now. If you wanted to start by putting up perhaps exhibit two. Number two? Exhibit two. Yeah. Can you see that, counsel? It's not up yet. It's coming. Okay. The only question that this court need resolve in this case is whether the government sufficiently proved that an individual familiar with the area, intimately familiar with the area, knew or should have known they were in a school zone. Because Angel Fernandez-Jorge was so familiar with this area that he felt confident he could escape from a shootout in broad daylight quickly enough to avoid detection. So familiar that he had in fact discovered a nearly perfect escape route. So familiar that he could then be trusted under intense pressure, time pressure, to locate a below ground tunnel shielded from view and run into it without hesitation. Now he was accompanied by six other people, wasn't he? Yes, your honor. Why is it just as feasible that he was just going along with the crowd? The government submits that it is not feasible if he happens to be the fastest runner, finds himself out in front, that he's going to stop him. He was in front? No, there's no evidence that he was in front. There's no evidence that he was behind anyone either. Well, how could the jury then conclude he was in front? The jury could reasonably conclude that there was a risk that not all of them would make it out, that some of them would be caught first, that no person would put themselves in a position of not knowing exactly where they were running beforehand, of not having carefully planned out their escape route. Just so I follow, are you saying that the jury had to conclude he was in front or that the jury concluded even if he was the last in the group that it would be reasonable to conclude that he knew the escape route? Neither, your honor. What the government is saying is that you don't know beforehand who's going to be the first one out, the first one done firing. You don't know who might be caught or slow. And so in order to maximize his chances of escape, it was reasonable for the jury to assume that he knew exactly where he was going, that he wasn't depending on someone else to be in front of him to follow. I see. Just to follow that thought through, the area you say he's familiar with is the interior of this housing project that includes the tunnel? No, your honor. It's a much larger area. No, I'm sorry. Just to know the escape route, it would follow that he knew the interior area of the housing project where the tunnel was. And in order to be sure that that was the best escape route, it's reasonable to conclude that he carefully studied all of the surrounding area for other possible escape routes as well. The way the district court put it is that the evidence at trial showed that the defendants carefully studied every possible means of egress and ingress from Hardina's housing project in order to secure the best escape route. This is where the housing project was, am I correct? Correct, your honor. That is Hardina's housing project. And this is where the school is? That is the basketball court and this is the school here. This whole area up there. This white building there is the basketball court? Correct, your honor. And this dark area is the ditch? Excuse me? The ditch in which you allegedly had these people jump? Yes. If you don't mind, your honor, could we move to exhibit 2A? It's a little bit more zoomed in. It might be easier to see. Okay, so the pink X is what was testified at trial was the area of the shooting. The green circle, the large green circle represents Hardina's. As your honor noted, this area here is the drainage ditch. This is the basketball court and this is the school. This is the old courthouse he was asked during his testimony to circle the old courthouse. And then this is the remainder of the tunnel that runs up to Dr. Palau's housing project. Okay. Can you tell me specifically, the points that you have are evidence that show that he knew that that was a schoolhouse? Sure. So what we have is circumstantial evidence that he had carefully studied the area in and around both of these housing projects. Is that in the record? Circumstantial evidence, your honor, that it was a carefully planned operation. You said? Excuse me? You say you have circumstantial evidence that he studied the area? Circumstantial evidence that the whole operation was carefully planned, which then allowed the jury to draw the inference that the area had been carefully studied for the best possible escape route. Whatever is there that he was part of that study? Yes, your honor, because he was willing to participate in this highly dangerous, highly illegal shootout in broad daylight. So he, as an individual, had to be confident that he knew where he was going and that that escape route was the best escape route. Supposedly he showed up that morning. Your honor, the jury was entitled to believe that no rational person would show up having just heard that there's a good escape route, but not knowing that it was the best one and not knowing how they were going to get there. Just so I get, there's a group of people who live right near that area, right? They live, five of them live in Dr. Palau Housing Project up here. Okay. And as to those people, presumably it's of some relevance that they live in the area, but you're suggesting it's not? Oh, it's absolutely of some relevance. Well, why? Because this person didn't. He said that he didn't, your honor. Are you suggesting there's evidence that he did? I'm saying the only piece of evidence on the record that at all suggests that he was unfamiliar with the area is that he told a police officer that he was from San Juan. Is there any evidence that he lived in the area like the other people did? He did not say that he lived in the area like the other people did. Why do you keep saying it that way? Is there any evidence that he lived in the area? If there is, just tell me what it is. Sure. So, not that he lived in the area, but that he was closely associated with people who lived in the area. And so, I just want to be clear that we believe there's evidence that he was familiar with the area, though not that he lived there. So, the evidence is that he was closely associated with people that lived in the area, and therefore, that is circumstantial evidence which could be taken to account by the jury that he knew the area. The jury could reasonably have drawn the inference that he was familiar with the area, not solely because he was closely associated with these people, but because he was willing to undertake an extremely dangerous activity there where it's essential that he be able to get away. Here's what I'm trying to isolate. One possibility is there's lots of evidence that the people who committed this, were involved in this incident, were very focused on how to get out of the housing project. Harding's, okay? But I had thought the district court also was of the view that it mattered that those people lived in the rough neighborhood, roughly speaking, the neighborhood, because that would make it more plausible that you would be aware that there was a school in the neighborhood. Sure. Okay, now you're saying this other person, who there's not any direct evidence or circumstantial evidence, lived in that neighborhood, would have been involved in the planning to get out of Harding's. May I? No, not yet. And what I don't quite follow is, even if that's true, since there's no visible sign showing it to be a school from Harding's, why doesn't it matter that this sixth person, person in this case, is lacking any evidence of them living in the area, and such that we can impute to them knowledge that there was a school in that area. That seems to be the basis of the district court's ruling on the Rule 25 motion here. May I respond? I see my time is out. But what I believe is we're talking about a continuum of possible evidence. And at one end we have the Guzman-Montanez scenario, where it's just someone who stops to buy some chicken. We don't know anything else about their involvement with the area. With Fernandez-Jorge, we have deep involvement with the area, and activities that a reasonable jury could have inferred require familiarity with the area, intimate familiarity with the area. Above that, we then have people who demonstrated that same familiarity because of their actions, but who also live there. So the government's position is that if you draw the line of what's sufficient evidence of knowledge, it should include both of those. It should include Fernandez-Jorge as well as his compatriots. I'm sorry. You're not going to sit down yet because I haven't gotten an answer to my question yet. Yes, Your Honor. You only told me the first thing, which is what are the other specific evidence that you have that he had knowledge of the area? So it's a set of factors related to his actions on that day. So the activity itself had significant circumstantial evidence of careful coordination. The fact that they were all wearing dark colors. The fact that they were all carrying black guns that could be camouflaged. The fact that they all showed up, Your Honor, at the same place at the same time to fire a coordinated hail of bullets from two separate positions. And, you know, including the fact that they had to bring someone in from San Juan to do that. That's additional evidence of careful coordination and careful planning. Please be specific as to this particular defendant. So there is not evidence that is specific to Fernandez-Jorge. There is evidence of what the group of them did that implied careful coordination. And we believe that it is reasonable for the jury to have inferred that he would not have participated in this activity that risked both life and freedom if he personally was not entirely confident of exactly what that best escape route was. But just so I get, what is the relationship between that point, and I take that point, and his knowledge of there being a school outside Hardeen's? I just am not following. I'm glad you asked that because that's exactly what I thought I was asking. Okay. So in order to locate the best possible escape route, the defendants would have had to examine all other possible escape routes, which would include possibly crossing the ditch and escaping through the school, which would have included going out the front door and running this way toward the town of Fumacao, which would have included running out and perhaps walking so as not to draw attention back to Palau, in which case they would have passed the front of the school or been on school grounds. The government's position basically is that in order to be sure that they had located the best possible escape route, they had to consider all the escape routes, which meant familiarity with everything in the area, including the well-marked two-story school that was visible from Hardeen's. There was lots of testimony that the school was in session that day. Was the theory that he would have faced the school grounds? Because that's what a person, that's what you have to believe? That would be part of careful assessment. What's another possibility? If he didn't do that, what else would have led him to believe there was a school there? So the school was in session during that day. It was the middle of the day. While there was no testimony about what the children did during the shooting was excluded under 403, again, a jury doesn't leave its common sense at home, so they could rationally have concluded that there are children present during the school day and that at some point during the planning, if not actually on the day, but certainly during the planning phases, that the defendants, including Fernandez-Jorge, should have become aware that there were children at that school. Additionally, the secretary of the school testified that the population attending that school was drawn largely from Hardeen's and from Palau. So people traveling between Palau and Hardeen's in a regular fashion would likely become aware that there were school children going to and from the school. My point is, you could have died up there. What's up there? Oh, that tells me something about how I know how to work. That X is where the murder took place, am I correct? Yeah, both shooting sites happened in that parking area, yes. Is there any evidence as to how the defendants allegedly got to this place? There is not, Your Honor. So they could have gotten through here? So there's not a sidewalk along here. So I suppose they could have, but then they would have been visible to passing cars on the highway. And from the fact that they chose not to go out the entrance of Hardeen Ace, we can imagine they maybe didn't want to be viewed by many people. But in any case, this would not be the typical way to get back and forth. And we know that from the testimony of Officer Fontanez, who said when he saw the defendants running this way, he didn't go this way. He went this way to be able to get to the end of the tunnel. Is that the other place where they were headed for? Yes, Your Honor. This housing project is Dr. Palou. Thank you. And so that tunnel right there lets out directly beside Dr. Palou. Yes. Judge Lippis, are you with us? Yes, I am. Thank you, Judge Trullo. Do you have any questions? Yes, thank you. I think this is something of a variation on Judge Barron's question. My impression is that Judge Dominguez, in assessing the knowledge of the co-defendants of the proximity of the school, emphasized the fact that I think four of them lived in the Dr. Palou housing project. Another defendant was from Humacao. And his point seemed to be that quite independently of the planning of this event, they already knew of the proximity of the school. The point is that really irrespective of the planning for this event, they already had that knowledge. The defendant here did not have the benefit of that residency. Isn't that correct? So there's no indication that independently of the planning of this event that he would have any knowledge of the proximity of the schools. Is that correct? That is correct, Your Honor. So what? For purposes of the planning of this event, why was it so important that that structure that was along the escape route, that the defendant here has any knowledge that it was a school? Why would that matter for the purpose of figuring out the best escape route? Why does that identity, its identity as a school, why would that matter? Two responses, Your Honor. First, at least one of the possible escape routes, if not more, would actually go through school grounds or directly in front of the school. And so it would be not important to that. What does the record say about that? You assert that. What is there in the record that supports that? It's circumstantial evidence of how carefully this was planned and that the escape route that they actually used was one that required sort of knowledge of the hidden parts of the area, which we argue in our brief that knowledge of the hidden sort of necessarily implies knowledge of the obvious landmarks nearby. In other words, to use an example from Guzman Montanez, there would be no reason to think that the average person entering a church's chicken would know anything about the hidden alley behind the restaurant. But if you had someone in the hidden alley behind the restaurant who obviously knew that it was there, that would be good reason to think that they knew the church's chicken was there. My final question, it's clear from the record, is it not, that there, unlike from the front of the school, which was visible from the roadway, there was nothing along the escape route that identified that building as the basketball court, that it was part of the school. Is that correct? There are no markings that would indicate that to anyone just passing by that area. Is that correct? Your Honor, it is correct that there are no signs or markings. However, the jury saw the photos of what was visible from the tunnel, and it is possible that they would have been entitled to believe that someone seeing that basketball court should have known that it belonged to a school. Why is that, this basketball court over Puerto Rico that don't belong to schools? Again, Your Honor, it wasn't something that direct evidence was introduced to on the record, but the jury saw the photos. They could see what was visible in the photos, and they could make up their own mind about whether it appeared to be a recreation area for a school. All right. Thank you. Thank you. Thank you. Mr. Milani, good morning. Good morning, Judge. Good morning, Judge Barron. Good morning, Judge Lipez. Let me start out by saying that there are no photographs and no other evidence other than testimonial evidence from the police officers that the basketball court could be seen. What you can see is some white siding, but actually the record states specifically that you could not see the hoops, you could not see any markings, any signs, letting anyone know that that was a basketball court, let alone that it was part of a school zone. Other than that, Your Honor, I'd like to clarify Exhibit 2A as it was referred to by my sister counsel. What's marked on the right-hand side in pink and green, I believe that's actually the former or the old courthouse in Umagao. The school is actually next to it. And what you would have further to the right, let me see if I can use a pointer here. Further to the right you have Road 924. My pointer doesn't work, if I may approach. Is that 924 there? Yes. Which is on the other side, and it's next to the Umagao, I'd say the town itself. So actually what is marked there is not actually the school, it's the old courthouse. Regardless of that, Your Honor, the fact is, as it was pointed out, there are no... Can I have the government put on Exhibit 48, please? No, it wasn't. Do you have it? If I may continue while that is being done. Your Honor, actually there was evidence that my client wasn't from there, and it was specifically asked of all the police officers in particular, Officer Abdel Morales, who had been a policeman in Umagao for approximately 15 years. And he'd never seen my client before that day. And furthermore, Your Honor, there's no evidence that he was ever seen by anyone in Umagao at all. So I think that Your Honor's remark that he got there that day is a proper one, is an appropriate one. Other than that, there's no evidence either of actually any of the defendants actually jumping the fence. That goes to your question regarding the order in which they jumped. The evidence states that the policeman who saw this saw some people jumping the fence, but they never were able to identify these particular defendants as the persons who jumped the fence. Ergo, they cannot argue who jumped first, who jumped last. Well, they actually, as I recall the record, they saw somebody jump over the fence into the ditch. They saw them go into the tunnel. Right. Away from the school. And they... Well, it was... Depending how you look at it, I'd say parallel to the school, but it doesn't make any difference. Then they saw later on people come out of that tunnel. Well, actually, Your Honor, if I may, what happened was that's the front of the school. Yes. That's the front of the school, and the record is clear that that's the only sign there is on the record identifying that building as a school. And you cannot see that from the rear, which is where the ditch or tunnel area actually is. Okay. Okay, but going back to your question, what happened was that, according to testimony, is that they crossed over the fence. They ran towards the ditch. If I can see photograph exhibit 2A again. And they ran towards the ditch. You see, they jumped around here, and they ran towards the ditch, which is up here. They jumped here, and they ran up there. And then they attempted to escape from the other side, which would be up there. They were unable to, and they came back. And that's when the police hear the voices. And then they shout out, don't shoot, we are unarmed, we're coming out. And they come out again where they actually went in. And the school is over here. So when I say that they ran away from what I mean is they jumped here, approximately here, and they ran that way, not this way. Not towards the school, but away from the school towards the Palau housing project. Yeah. Other than that, Your Honor, I don't think there was any evidence on the record either regarding the association between the defendants. I mean, they were together, but that's it. That's the extent of it. There is no evidence on record that they even knew each other. Granted, they were together, but again, that's mere presence on the other hand. No, but I think there are cases that hold up where people joined together to engage in a dangerous criminal enterprise because they know each other or trust each other. That is an inference that may be drawn. I'm just addressing myself to the specific record. There is no statement on record and no evidence on record actually stating or pointing towards that. And that is remarkable insofar as if these were people who were from Umacao, somebody should have seen the defendant, the appellee, somebody. I mean, he must have been somewhere in Umacao at some point in order to make an inference of knowledge of the area. What about the government's argument? What's your response to it? If this was a jury could find a planned event, so they would have planned their escape route. They had figured out a pretty clever escape route as it was. So why couldn't a jury conclude that they would have been generally familiar with the area to choose that escape route as opposed to others? Well, Your Honor, to use your term, I don't think there's any evidence of any casing of the school or of the area at all. You're talking about some familiar story. They concede there's no evidence of it. But their proposition is just like it's a reasonable inference that if you join together with this group, you must be familiar with the group. Why isn't it similarly a reasonable inference that if the group has planned a sophisticated escape route, they must have considered other sophisticated escape routes? Well, I disagree with the description of it as a sophisticated escape route. This is a tunnel that is well known by the residents of the area, and this is a tunnel that was used by people from Palo to go towards Jardines Oriente and vice versa. Is that an evidence? It's not an evidence. I'm speaking of things that are not on the record. Well, don't speak about them. I'm sorry, Your Honor. I apologize. At any rate, it is reasonable to assume that these other residents knew of the area, and that's why they went through it. There's no need for any major planning at all. And with that, unless you have any other questions? Judge Rivas, do you have any questions? Yes, I do. Thank you. Counsel, I'm looking at Judge Dominguez's very thoughtful written opinion, and he writes this. It is reasonable to infer that defendants studied all points of ingress and egress around Jardines Oriente in an attempt to concoct the perfect escape route. Why isn't that observation, which refers to the defendants generally, why isn't that absolutely your client? Or to put it another way, why couldn't a reasonable jury, and we're supposed to ask that question, could a reasonable jury have reached the conclusion of good about the knowledge of your client? Why couldn't their knowledge of the proximity of the school be reasonably imputed to your client, given the importance of identifying the best escape route? Why wouldn't that be a fair and reasonable inference for a jury to draw? What they knew as co-defendants about the area, he knew, too. What's wrong with that as a reasonable inference? Well, I think that knowledge or science must be individual and personal. And second of all, I don't think that the fact that there may have been a meeting, which we deny there's no evidence of that, necessarily means that they discussed the school. That doesn't necessarily follow. So accordingly, I don't think it is a fair conclusion or determination to say that my client was aware of the school. He wasn't from there, so the school would have been irrelevant for him. Why would any remark be done to a landmark that is not remarkable to him? Okay, thank you. Thank you. Thank you, judges. Ms. Schwartz, I think you have two minutes. Thank you, Your Honor. I have just two quick points in rebuttal. I'd like to draw your attention to I think it's Exhibit 7 of the agents walking alongside the drainage ditch. And there was testimony at trial that that white wall that you see right here. That's part of the roof. That's the fence that the defendants jumped. Oh, this one on the left. Yes, this part to the left here. That is the fence that the defendants jumped to get to the drainage ditch. As you can see, it's quite tall. And so, again, demonstrating their familiarity with the area, they knew that on the other side of this extremely tall cement wall was their escape route. And also, while we can see that the view from here of the basketball court is mostly the roof and a little bit of underneath that you can see through. If we were a little further down, we'd be able to see through to the school, as you can tell from the maps. From above the wall where they were jumping, again, the jury was entitled to infer that they could have seen far more of the school. If you would, that Exhibit 6, can you put Exhibit 6 on? Or 6A, 1 or 2, I think. Yes. That's why it shows the wall. And I'm not so sure that that's the wall. There was testimony at trial that that is the wall. Yeah, this is the wall. And so you're seeing this portion of the wall there in the other photo. So it is the same wall, and evidence at trial established that. The other thing I want to point out is that while we don't have any evidence anywhere in the record that the tunnel was well-known by any means, what we do have is evidence that someone not from the area would have a lot of difficulty locating that tunnel because it wasn't obvious. And that was Officer Hidalgo who came in to do measurements, was not from the area, and he got lost trying to locate that tunnel. So if Fernandez-Jorge was not from the area, it's reasonable to assume he would also have had difficulty locating the tunnel. And since we didn't, that means we can and should and actually must infer, as the jury presumably did, that Fernandez-Jorge had detailed and intimate familiarity with the area. Thank you, Your Honor. Thank you. Oh, wait a minute. Judge Leifers, do you have any questions? No, thank you. I'm done. Thank you. Thank you, Your Honor.